# Warwick School District v.
# Warwick Education Assn.

*Shirk, Reist & Buckwalter*, for plaintiff.
*Gerald E. Ruth*, for defendant.

BROWN, *J.*, May 9, 1975.—Before the court in this matter is the motion of defendant, Warwick Education Association ("association"), for judgment on the pleadings on a bill in equity instituted by Warwick School District ("district") against association. Preliminarily, it should be stated that:

" 'On a motion for judgment on the pleadings by the defendant, the complaint, the answer and reply to averments of new matter in the answer are considered, and all facts pleaded by the plaintiff which are relevant and material must be accepted as admitted even though denied. . . .' Judgment may be entered only if the case is clear and free from doubt on the pleadings. Eckborg v. Hyde-Murphy Co., 442 Pa. 283, 276 A.2d 513 (1971);

Blumer v. Dorfman, 447 Pa. 131, 289 A.2d 463 (1972)." Meyn v. Ross, 43 Northumb. 122 (1971), citing Goodrich-Amram.

With the above proscription in view, we must examine the pleadings to determine if there is any merit to association's motion.

The parties are partners to a collective bargaining agreement, the first date being October 22, 1972, for a term from July 1, 1972, to June 30, 1973, inclusive. The second was for the school year 1973-74, dated September 13, 1974.

Page 3 of the 1972-73 agreement, article X, paragraph 2, lines 238-42, provides:

"Unit members . . . working toward an earned graduate degree shall be reimbursed in accordance with paragraph 9 hereof for any courses approved by the college or university as a part of the degree program."

Article X of the same contract, at lines 228.1 through 229.2, provides:

"To encourage professional growth, the board will assist with the cost of post-baccalaureate education by reimbursing professional employees holding a valid college provisional teaching certificate, to the extent of actual tuition costs *incurred and submitted for payment during the term of this contract.*" (Emphasis supplied.)

According to Article XV, line 351, the 1972-73 collective bargaining agreement expired June 30, 1973.

District's superintendent of schools, by a letter dated June 1, 1973, notified all affected unit employes of the pending expiration of the 1972-73 collective bargaining agreement on June 30, 1973. The employes were advised: "All terms and provisions of the Agreement expire, in toto, after June 30, 1973."

On September 13, 1974, district and association executed a collective bargaining agreement for the 1973-74 school year. Article X of this 1973-74 agreement in section A, lines 272-77, states:

"The board will assist with the cost of post-baccalaureate education by reimbursing professional employees . . . to the extent of actual tuition costs, incurred and submitted for payment during the term of this contract."

The following subparagraph 9, lines 320-28, provides:

"Unit employees holding a valid Pennsylvania Teaching Certificate shall be reimbursed actual tuition costs according to the following schedule:

"0 to 15 post-baccalaureate credits—$150.00 maximum for the term as provided below

"16 or more post-baccalaureate credits—$250.00 maximum for the term as provided below

*"This provision (paragraph 9) shall become effective September 1, 1973,* and shall continue in effect for the term of the agreement." (Emphasis supplied.)

Article XV of the 1973-74 agreement, lines 428-33, states:

"This agreement shall be effective as of July 1, 1973 *(except as otherwise provided)* and shall continue in full force and effect until June 30, 1974." (Emphasis supplied.)

Subsequent to September of 1973, the association's union requested Warwick to reimburse about 40 of its unit members for tuition costs which they incurred in taking post-baccalaureate courses in the summer of 1973. The costs for which reimbursement was requested were incurred from July 1, 1972, until August 31, 1973.

These requests fall into two distinct groups. One group of employes requested reimbursement for

tuition costs which may have been incurred before the termination date of the 1972-73 contract but who had submitted request for payment *at various times after* the contract expiration date of June 30, 1973.

Another group requested tuition reimbursement for courses, the costs of which were incurred *after* the termination of the aforesaid agreement, but *before* the effective date of the tuition reimbursement clause in paragraph 10 of the 1973-74 collective bargaining agreement.

These requests were denied by the officers of district as not authorized under the express terms of the agreement and association filed a grievance against district on November 13, 1973.

This grievance stated that district failed to comply with article X, paragraph 9, of the expired 1972-73 collective bargaining agreement, lines nos. 256-10 through 256-14, in that 40 specific unit employes were refused their request for reimbursement of tuition incurred from July 1, 1972, until August 31, 1973.

District filed level III response to this grievance on or about December 18, 1973, in which the Warwick Board of School Directors denied the grievance with the following comments:

"1. In preceding years the Board of School Directors has paid tuition reimbursement only in context with and under specific provisions of a collective bargaining agreement currently in effect. The superintendent, by letter dated June 1, 1973 notified all Unit employes of the pending expiration of the 1972-73 collective bargaining agreement, including all benefits provided in the agreement. All Unit employes had, therefore, ample notice of termination of the 1972-73 collective bargaining agreement.

"2. There is reason to believe the Association cannot grieve terms of an expired collective bargaining agreement. Equally, the Association cannot grieve tuition reimbursement provisions of the 1972-73 collective bargaining agreement under provisions of the 1973-74 agreement. The grievance is, therefore, defective and not timely.

"3. Article X, line 229-1 of the 1972-73 collective bargaining agreement states '. . . incurred and submitted for payment during the term of this contract. . . .' The term of the agreement, as stated in Article XV, line 351-1, expired June 30, 1973. Accordingly, all tuition costs incurred and submitted for payment after this date are not subject to reimbursement under provisions of the 1972-73 agreement.

"4. School board policy 3625, relevant to tuition reimbursement, is not included in the 1972-73 or the 1973-74 collective bargaining agreements, or in the appendices to these agreements. The policy is, therefore, irrelevant to this grievance."

On January 25, 1974, association filed a charge of unfair labor practice on the same issue as contained in the grievance indicated above. The Pennsylvania Labor Relations Board, by nisi order dated June 5, 1974, from which no appeal was taken, ruled that district committed no unfair labor practice with regard to this issue.

On or about June 26, 1974, association, by its officer, Francis R. Lyon, filed with the Pennsylvania Department of Labor and Industry, Bureau of Mediation, a request for the appointment of a grievance arbitration panel to consider the above grievance and submit it to binding arbitration.

Thereafter, district filed the above-captioned proceedings with the relief requested, to which association has filed its answer and motion for judg-

ment on the pleadings, which is the matter now before this court.

The motion for judgment on the pleadings contends the following: plaintiff fails to state a claim upon which relief can be granted; plaintiff's rights rest solely upon the interpretation of written instruments included in the complaint and the legal interpretation is that plaintiff is not entitled to recover; plaintiff is not entitled to the relief sought because there is a specific adequate and complete mandatory statutory remedy at law; plaintiff is not equitably and in good conscience entitled to the relief requested; and injunctive relief is contrary to public policy and spirit of Act 195. The sole issue before the court, therefore, is whether this court can entertain a complaint in equity for injunctive relief or whether the motion for judgment on the pleadings should be sustained in that plaintiff has an adequate remedy at law, to wit, compulsory arbitration as provided by the Act of July 23, 1970, P.L. 563 (No. 195), art. IX, sec. 903, 43 P.S. §1101.903. This act provides as follows:

"Arbitration of disputes or grievances arising out of the interpretation of the provisions of a collective bargaining agreement is mandatory."

District contends that it has been held that "the construction of a contract to determine what questions the parties have agreed therein to submit to arbitration is one, not for the arbitrators themselves, but for the court to decide and cites American Re-Insurance Company v. Frankford Union Mutual Insurance Company, 47 D. & C. 2d 640 (1969), and Westmoreland Hospital Association v. Westmoreland Construction Co., 423 Pa. 255, 223 A.2d 681 (1966); Philadelphia Marine Trade Association v. International Longshoremen's Association, Local No. 1291, 382 Pa. 326, 115 A.2d 419

(1955), all of which cases were equity actions, as authority for its position that equitable relief is warranted in this case.

The apparent position of association's union in this case is that the 1973-74 collective bargaining agreement should be applied retroactively, so that those who received credits in the summer of 1973 should receive reimbursement therefor even though there was no agreement in effect at the time the courses were taken.

The express provisions of the contract quoted above clearly show, however, that the parties intended not to reimburse teachers for courses taken before September 1, 1973.

It is true that for most disputes arising between parties to a collective bargaining agreement, arbitration is mandatory under the Act of July 23, 1970, P.L. 563 (No. 195), art. IX, sec. 903, 43 P.S. §1101.903. However, in the present case, there is no dispute or grievance "arising out of the *interpretation*" of a collective bargaining agreement. Association has presented no indication of any clause, paragraph, phrase, or other provision of a contract that is to be "interpreted." This is because there is nothing to interpret. The mandatory arbitration provision of Act 195 of 1970 simply does not apply here, because there is no provision of this contract which, under any interpretation, could give the association the rights that are alleged.

It must be noted that, even where 43 P.S. §11-01.903 applies, the court has jurisdiction of the dispute, and it cannot be said that the court has no jurisdiction over the subject matter in a case such as the present: Bristol Township Educational Association v. Bristol Township Board of School Directors, 55 D. & C. 2d 605 (1972).

It is clear that equity has jurisdiction in this case. In a similar case to the present action: Elizabethtown Area School District v. Elizabethtown Area Educational Association, docketed in this court to Trust Book 15, page 318, plaintiff school district alleged that the union sought to apply the contract to its employes who were not within the bargaining unit. The plaintiff school district, therefore, brought an equity action to prohibit this. In an opinion issued March 22, 1974, the Hon. Wilson Bucher, Judge of the Court of Common Pleas of this Court, held that equity had jurisdiction in this matter, stating as follows:

"Whether a party to a contract is bound to arbitrate and on what issues, if any, are to be arbitrated are matters for the court to determine from the provisions of the contract. (U. Steels Workers of A. v. Westinghouse E. C., 413 Pa. 358)."

It is clear that district here is entitled to equitable jurisdiction, as there is no adequate and complete relief at law. On the present facts, district would be subject to repeated grievances or repeated unfair labor charges, as other professional employes asked for reimbursement in the same manner as the 40 employes in this action. Moreover, there is no obligation under the law on district's part to submit to mandatory arbitration under Act 195. In the absence of equitable jurisdiction here, there would be no way for district to redress its freedom from being forced into an improper and useless arbitration.

As heretofore stated, judgment on the pleadings should only be granted in clear cases and this case is not free from doubt. It may well be that, at the trial of this case, testimony may indicate that an interpretation of the contracts between the parties here is needed, but on the present state of the pleadings, without any testimony to support the motion

for judgment on the pleadings, this court is clearly of the opinion, for the reasons hereinabove stated, that there is no showing that judgment may be entered in that the case is not clear and is not free from doubt on the pleadings. For present purposes, the court is not convinced that there is an arbitrable dispute between the parties and preliminarily the court will not submit to the determination of a legal issue by the decision of a lay arbitrator who may not understand nor is obliged to apply legal precepts to any such decision.

Accordingly, the court will dismiss the motion for judgment on the pleadings.

And now, May 9, 1975, for the foregoing reasons, the motion for judgment on the pleadings is denied and dismissed.